IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : |
| | : Criminal Action No. 05-111 JJF |
| KATSIARYNA KABIARETS | : |
| Defendant. | : |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE**

**COMES NOW** the United States of America, by and through its attorneys, Colm F. Connolly, United States Attorney for the District of Delaware, and Douglas E. McCann, Assistant United States Attorney for the District of Delaware, and hereby responds to Defendant Katsiaryna Kabiarets Motion to Suppress Statements and Evidence as follows:

1.     The government expects to adduce the following testimony, among other things, at the evidentiary hearing set for May 9, 2007. On November 9, 2005, the United States Secret Service was contacted by American Express about credit cards being compromised at Harpoon Hanna's, a restaurant located in Fenwick, Delaware. American Express informed the Secret Service that it had narrowed the point of compromise to the defendant, a waitress at Harpoon Hanna's. The Secret Service learned from American Express, and later from Harpoon Hanna's employees, that the restaurant assigned each server a number, in part to track server tips connected to credit card charges, and that the defendant's server number was associated with most of the allegedly compromised accounts.

2. On November 16, 2005, Special Agent Michael Armstrong and Special Agent Al Lassiter traveled to Harpoon Hanna's as part of the investigation. After meeting with Harpoon Hanna's management, the agents approached the defendant, identified themselves, and asked to speak to her. The defendant agreed to speak with the agents. The agents sat down with her in a booth in the dining room of the restaurant. The agents began by asking some biographical information. The defendant confirmed that she was a native of Belarus, that she entered the United States in May, 2004, and that she lived in Maryland. Special Agent Armstrong then read the defendant her Miranda rights from a pre-printed Secret Service form. The form is broken into three sections: the Miranda rights; the waiver of those rights; and a certification that the Special Agent had read the form to the defendant. Each section contained a separate signature block; the defendant signed all three blocks.

3. Following the execution of the Miranda waiver, the defendant stated, in essence, that she had been asked by another person to obtain credit card numbers, that the person had provided her with a device to capture credit card numbers, and that she had used the device about fifty times. The defendant also said that she had traveled to New York to meet with the person who had provided the device, and that she had observed the person download information from the device. After making an oral statement, the defendant was asked to make a written statement, which she did.

4. During the interview, the defendant was asked to sign a consent to search her car and residence. She signed a separate consent for each. The agents then accompanied the defendant outside the restaurant to search the car. While the agents were searching the car, the defendant asked to return inside to use the restroom and to get her coat. The agents allowed her to go, although Special Agent Armstrong followed along behind the defendant. While inside the

restaurant, another employee advised Special Agent Armstrong that the employee had seen the defendant place an object on the shelf of the coat closet. This object proved to be a credit card "skimmer;" an electronic device capable of capturing credit card information. The agents determined to leave the skimmer on the shelf for a period of time to see if the defendant would recover it. After a while, the defendant drove with the agents to her residence to execute the consent search (the defendant drove her own car accompanied by one agent, the other agent followed in the agents' car); because the defendant had not attempted to retrieve the skimmer by the time the agents left for the defendant's residence, they took custody of the skimmer.

5. The agents conducted a consent search of the defendant's residence on November 16, 2005.

6. On November 18, 2005, the defendant traveled to the Wilmington office of the Secret Service. She was interviewed by Special Agent Armstrong and Special Agent Michelle Moorhead of the Secret Service's Baltimore office. The defendant was again advised of her Miranda rights using a pre-printed form as described above. The defendant waived her rights. Special Agent Armstrong confronted the defendant about the skimmer; the defendant admitted to placing it on the shelf of the coat closet. The defendant also stated, in essence and among other things, that there were forty-four numbers on the skimmer,[1] and that she had been paid $500 for the credit card numbers that she had delivered to the person who gave her the skimmer. After making an oral statement, the defendant was asked to make a written statement, which she did.

7. At the conclusion of the interview, the defendant was arrested.

---

[1] A subsequent examination of the skimmer revealed that it had seventy-two credit card numbers on it.

8. In her Motion, the defendant argues that her statements should be suppressed because they were not given voluntarily. D.I. 15 at ¶ 4, 5. The defendant also argues that any evidence should be suppressed because it was taken without a warrant. D.I. 15 at ¶ 9-11.

**The Defendant's Statements Were Not Taken in Violation of Any Constitutional Right**

9. Where the defendant challenges the validity of a Miranda waiver and the admissibility of subsequent statements, the government bears the burden of proving by a preponderance of the evidence that the statements at issue were not the product of custodial interrogation conducted in the absence of Miranda warnings. Miranda v. Arizona, 384 U.S. 444 (1966), Colorado v. Connelly, 479 U.S. 157, 168-69 (1986). The question of custody involves the assessment of the following issues: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt she was not at liberty to terminate the interrogation and leave. After it has heard the relevant facts, the Court must then apply an objective test to resolve "the ultimate inquiry: was there a formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. Thompson v. Keohane, 516 U.S. 99, 112 (1995); Yarborough v. Alvarado, 541 US 652, 662-63 (2004).

10. Assuming a custodial interrogation (which was not the case here), whether the defendant's waiver of her Miranda rights is valid should be assessed in light of the "totality of the circumstances surrounding the waiver." United States v. Smith, 679 F. Supp. 410, 412 (D.Del.1988) (citation omitted). When analyzing the totality of the circumstances, this Court must look at the facts of the particular case, including the background, experience, and conduct of the suspect. See United States v. Sriyuth, 98 F.3d 739, 748-49 (3d Cir. 1996).

4

11. The Court must consider two factors to determine whether the defendant's waiver was voluntary, knowing and intelligent:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

United States v. Durham, 741 F. Supp. 498, 502 (D.Del. 1990) (citation and emphasis omitted).

12. The facts described above, which the government expects to adduce at the hearing, demonstrate that the defendant was not in custody while she was being questioned. Even if she were in custody, she was properly advised of her Miranda rights prior to interrogation, she understood those rights, and she knowingly, voluntarily and intelligently waived them.

### No Evidence Was Obtained in Violation of Any Constitutional Right

13. The defendant's papers do not specify what evidence she seeks to suppress, or the basis for such suppression. All of the evidence that the government might seek to introduce at trial in this case was either abandoned or taken pursuant to a valid consent.

14. When a person abandons property, she forfeits her privacy interest in that property. See United States v. Fulani, 368 F.3d 351, 354 (3d Cir. 2005) (citations omitted). Abandonment for purposes of the Fourth Amendment requires an examination of the individual's reasonable expectation of privacy, not her property interest in the item. See id. "A court must determine from an objective viewpoint whether property has been abandoned. Proof of intent to abandon property must be established by clear and unequivocal evidence." Id. The facts described above, which the government expects to adduce at the hearing, demonstrate that the

defendant abandoned the skimmer when she voluntarily placed the skimmer on the shelf of the restaurant's coat closet, a place where she had no reasonable expectation of privacy. She made no effort to recover it while still in the restaurant, and never gave any indication that it was hers until two days later when confronted with it by the agents. Thus, the seizure of the skimmer, and the subsequent search of its contents, did not violate any Constitutional right held by the defendant.

15.    The Supreme Court has held that a warrantless search is justified by a valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The consent must be voluntarily made, and the person giving consent to search must have the authority to do so. United States v. Matlock, 415 U.S. 164, 171 (1974). The facts described above, which the government expects to adduce at the hearing, demonstrate that the defendant voluntarily consented to the search of her automobile and her residence, and any evidence obtained therefrom was therefore not taken in violation of any Constitutional right held by the defendant.

16. The government respectfully reserves the right to supplement this Response with additional facts and briefing as necessary following the hearing.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Douglas E. McCann
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899
(302) 573-6277

Dated: May 8, 2007

## CERTIFICATE OF SERVICE

I, Douglas E. McCann, hereby certify that on May 8, 2007, I served the foregoing:

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND PHYSICAL EVIDENCE**

by CM/ECF on

> Christopher Koyste, Esquire
> First Federal Plaza
> 704 King Street, Suite 110
> Wilmington, Delaware 19801

> /s/ Douglas E. McCann
> Douglas E. McCann